UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-00136-JRS-TAB |
| | ) | |
| BLAKE ROBERTS, | ) | |
| | ) | |
| Defendant. | ) | |

**Order on Motion to Suppress**

Blake Roberts moves to suppress all physical and testimonial evidence resulting from the search of his residence on April 19, 2022. (ECF No. 23.) For the following reasons, Defendant's Motion is **denied**.

**I.   Background**

The underlying facts are not disputed.  On April 8, 2022, Officer Jonathon Willey of the Marion County Police Department submitted a search warrant ("the Facebook Warrant") seeking access to several portions of Defendant's Facebook account based on Defendant's two outstanding arrest warrants for felony resisting arrest using a vehicle (Cause Numbers 49D26-2201-F6-000637 and 49D26-2203-F6-005630).  (ECF No. 28-1 at 6.)  In the Facebook Warrant, Officer Willey explained that his request to access Defendant's Facebook account would "assist in locating [Defendant] and arresting him on his two outstanding warrants." (*Id.*) The Facebook Warrant sought access to twenty-five categories of information, including Defendant's posts, friend lists, associated email addresses, and private messages. (*Id.* at 7–8.)  Additionally,

the warrant requested "ping" location data associated with the account, limited temporally from March 8, 2022, to May 8, 2022. (*Id.* at 10.) The warrant was issued by Judge Michelle Waymire. (*Id.* at 16.)

While executing the Facebook Warrant, Officer Willey found evidence of Defendant's possible possession of firearms; Officer Willey knew that Defendant was a serious violent felon, having previously been convicted of burglary under Cause Number 32D03-1107-FB-000047 on February 14, 2012, and that therefore, his possession of a firearm would be unlawful. (ECF No. 28-2 at 6.) Specifically, the evidence was found in Defendant's private messages with an individual named Cody Mayes, wherein Defendant asks Mayes to "find me another pistol" because his current rifle is "to [*sic*] big to carry around." (*Id.*)

On April 19, 2022, Officer Willey applied for a second search warrant ("Residential Warrant #1") requesting a search of Defendant's residence. (ECF No. 28-2 at 1.) The warrant affidavit discussed Defendant's prior criminal history and the private messages found in the Facebook search. (*Id.* at 5–6.) Additionally, the warrant affidavit described information received from a "known source" who wished to remain anonymous. (*Id.* at 7.) The source advised Officer Willey that Defendant's residence was located at the intersection of Sheffield and Morgan Street; that Defendant drove a white Buick which he had used to flee from police on several occasions; that Defendant lived with his girlfriend,[1] Angela Bautista, and her kids in the residence; and that Defendant always had a gun on him or in his home. (*Id.*) Finally, the

---

[1] Through other investigative techniques, Officer Willey had previously identified Defendant's girlfriend as Angela Bautista. (ECF No. 28-2 at 7.)

2

warrant affidavit discussed in extensive detail a surveillance investigation conducted by detectives on a residence located at 2207 Morgan Street ("the 2207 residence"). (*Id.*) In pertinent part, the warrant affidavit explained that the surveillance detectives observed Defendant entering and leaving the 2207 residence on several occasions. (*Id.*) The detectives likewise observed Bautista and her kids entering and leaving the residence. (*Id.*) The Facebook location data (retrieved through the previous Facebook Warrant) also showed pings all within the radius of the 2207 address. (*Id.* at 8.) Finally, at multiple times, the detectives observed Defendant enter a white Buick that he drove to and from the 2207 residence. (*Id.* at 8–9.) Based on all of the above, Officer Willey sought the warrant to search the 2207 residence and the white Buick, believing there to be further evidence of Defendant's illegal possession of a firearm. (*Id.* at 9.) Judge John Keiffner issued Residential Warrant #1on April 19, 2022. (*Id.* at 15.)

While executing Residential Warrant #1 at Defendant's residence, one of the officers located a purple Crown Royal bag lying on the kitchen stove and containing a white crystal substance. (ECF No. 28-3 at 11.) Based on professional experience, the officer believed the substance was methamphetamine. (*Id.*) The search also yielded a black operational digital scale with white residue and a glass smoking pipe. (*Id.*) Based on these additional findings, Officer Willey applied for another search warrant for the 2207 residence ("Residential Warrant #2") believing there to be evidence of illegal drug possession. (*Id.*) Judge John Keiffner issued Residential Warrant #2on April 19, 2022. (*Id.* at 19.)

Defendant now moves to suppress all evidence recovered "from the search of [D]efendant's residence on April 19, 2022." (ECF No. 23.)

**II.  Discussion**

The crux of Defendant's argument is that the Facebook Warrant violated the Fourth Amendment.  (ECF No. 24 at 5.)  Thus, he continues, because Residential Warrant #1 and Residential Warrant #2 each rely, in part, on evidence recovered through the Facebook Warrant, the evidence produced from the Residential Warrants are "fruits of a poisonous tree" that should be suppressed.  *See generally Wong Sun v. United States*, 371 U.S. 471 (1963).

A.  <u>The Facebook Warrant</u>

Defendant argues the Facebook Warrant is (1) unsupported by probable cause and (2) overbroad.  The Government counters that (1) all of the categories of evidence were discussed in particularized detail, (2) all categories were useful in potentially locating Defendant, (3) the Facebook location data was limited in scope to a brief time period, and (4) the incriminating private message at issue was discovered by Officer Willey on the same day the Facebook Warrant issued, and he immediately ceased looking for evidence of additional criminal activity, thus self-limiting the scope of his search.  (ECF No. 28 at 6.)

The Facebook Warrant is, at least in part, supported by probable cause.  Two warrants were out for Defendant's arrest, and his location at the time was unknown.  These circumstances provide a basis for probable cause to search his Facebook account for location information that might disclose his whereabouts.  *See United*

4

*States v. Grubbs*, 547 U.S. 90, 96 (2006) (noting that probable cause for issuing a search warrant can include whether a fugitive will be located on a premises). Defendant does not contest that there was probable cause for searching the location data on his Facebook account but takes issue with the other categories searched via the warrant (in particular, his private messages).

The issue, then, is whether the Facebook Warrant was overbroad in violation of the particularity requirement of the Fourth Amendment. *See United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015) (cleaned up) ("The Fourth Amendment's particularity requirement limits the authorization to search to the specific areas and things for which there is probable cause to search, and in doing so ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."). While the Seventh Circuit and Supreme Court have not yet provided specific guidance on search warrants similar to the Facebook Warrant, at least one circuit has found such "social media warrants" to be overbroad and invalid. *See United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (finding warrants seeking search of "virtually every type of data that could be located in a Facebook account" to be overbroad, but nonetheless admitting the evidence under the good faith-exception).

Notwithstanding the fact that Facebook users often purposefully or inadvertently divulge their location through routine postings—for example, by uploading pictures with embedded geolocation data or with overt indicia of location displayed in the picture itself, by "checking in" to a certain place, by expressly posting where they are

5

or intend to be in the future, by allowing friends to tag them in a picture placing them at a certain location, etc.—and even use Facebook to specifically designate the location of social meetings, flashmobs, riots and the like, Defendant argues that the Facebook Warrant was overbroad in its scope, allowing Officer Willey to sift through a substantial portion of Defendant's private online data when some of that data, arguably, had no bearing on determining Defendant's location and thus was unsupported by probable cause. However, the Court need not determine the validity of the Facebook Warrant here. Rather, assuming *arguendo* that the Facebook Warrant is impermissibly overbroad, the Court still finds that suppression of the evidence derived from the Residential Warrants would be inappropriate; Officer Willey and his team applied for and executed *both* the Facebook Warrant and the Residential Warrants in good faith, and Defendant has not met his burden demonstrating the contrary.

B. The Good-Faith Exception

Even assuming the Facebook Warrant was invalid, the exclusionary rule does not bar evidence derived from the information obtained in the search of Defendant's Facebook account. Exclusion of evidence recovered in violation of the Fourth Amendment is not a constitutional right. *Davis v. United States*, 564 U.S. 229, 236 (2011). "Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* at 237 (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)). "Exclusion exacts a heavy toll on both the judicial system and society at large." *Id.* And exclusion of evidence is only to be used as a "last resort." *Id.*

Ultimately, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.* (citations omitted).

Consequently, one well-settled exception to the exclusion of evidence obtained in violation of the Fourth Amendment is "if the officers conducted the search in good-faith reliance on a warrant." *United States v. Matthews*, 12 F.4th 647, 651 (7th Cir. 2021) (citing *United States v. Leon*, 468 U.S. 897, 918–23 (1984)). The Government bears the initial burden to show that the officers acted in good faith; however, "an officer's decision to obtain a warrant is prima facie evidence of his good faith. . . . We therefore presume that an officer with a warrant was acting in good faith, and the defendant's burden is to rebut that presumption." *Id.* at 653 (citations omitted). Defendant's burden is "heavy." *Id.* To overcome this heavy burden, a defendant must establish one of the following four circumstances:

> (1) the affiant misled the magistrate with information the affiant knew was false or would have known was false but for the affiant's reckless disregard for the truth; (2) the magistrate wholly abandoned the judicial role and instead acted as an adjunct law-enforcement officer; (3) the affidavit was bare boned, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid.

*United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) (quoting *Leon*, 468 U.S. at 923). Defendant only argues the existence of the third and fourth circumstances. (*See* ECF No. 29 at 2; ECF No. 24 at 5–6.)

"[P]olice officers are charged with a knowledge of *well-established* legal principles as well as an ability to apply the facts of a particular situation to these principles." *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009) (emphasis added) (cleaned

7

up). In determining whether a police officer reasonably believed a warrant was valid and founded on probable cause, the Seventh Circuit looks to whether the warrant at issue and its underlying facts are "materially indistinguishable" from other warrants previously found to be deficient in the caselaw. *Id.* Citing to any caselaw in the country is not enough; the law must be "well-established" and from the Seventh Circuit to reasonably give an officer in this jurisdiction adequate notice of a warrant's deficiency. *See United States v. Orozco*, 576 F.3d 745, 750 (7th Cir. 2009) (emphasis added) (quoting *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002)) (finding the good faith-exception applied because "*[w]e* have not *'clearly held* that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand'"); *see also United States v. Rainone*, 816 F.3d 490, 496 (7th Cir. 2016) (emphasis added) ("[T]he federal good-faith exception *and Seventh Circuit precedent* govern whether the exclusionary rule applies."). Simply, if the warrants at issue are materially the same as a warrant previously found deficient in the Seventh Circuit, then the executing officers would be on notice that the warrants could not be valid; thus, the good-faith exception would not apply. *Bell*, 585 F.3d at 1052. On the other hand, if the warrants or their underlying facts are at all distinguishable from warrants found deficient in previous cases, then the exception applies. *See id.* at 1053; *see also Arizona v. Evans*, 514 U.S. 1, 14 (1995) ("[T]he exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees.").

Defendant cannot meet his heavy burden here.

First, the totality of Officer Willey's conduct only points to good faith.  Officer Willey sought and obtained a warrant (the Facebook Warrant) to search Defendant's Facebook account for evidence of his location because Defendant was a fugitive from the law.  Such location information reasonably could have been found in myriad ways on Facebook including in private messages, but the messages here happened also to lead to evidence of other criminal activity.  When he found a message evidencing Defendant's illegal possession of a firearm, he ceased searching the remainder of the account and only focused on the historical location data, which he appropriately had limited in scope to a short time period.  Officer Willey then sought and obtained Residential Warrant #1 based on (1) Defendant's private Facebook messages, (2) Defendant's Facebook location pings, (3) information obtained from a known source to Officer Willey, and (4) detailed corroborating police surveillance.  Then, upon executing Residential Warrant #1 and finding drugs and drug paraphernalia in Defendant's residence, Officer Willey yet *again* sought a warrant to search the home in the form of Residential Warrant #2, even though this was unnecessary.  *See United States v. Ceballos*, 385 F.3d 1120, 1124 (7th Cir. 2004) (discussing the plain view exception to the search warrant requirement); *see also United States v. Butler*, 283 F. App'x 393, 397 (7th Cir. 2008) (emphasis added) ("Butler cannot overcome the presumption of good faith that arose because Sheriff Petty applied to a judge for a search warrant—*a presumption which is further reinforced* by the government's return to a judge *to obtain a second warrant* to continue the search after discovering

the drugs."). There is nothing to suggest that the conduct of Officer Willey or his fellow officers did not proceed in good faith reliance on issued warrants.

Second, Defendant fails to point to *any* binding legal precedent that found deficient a warrant materially indistinguishable from the Facebook Warrant. To be clear, Defendant only argues that reliance on the *Facebook* Warrant was unreasonable and not in good faith.[2] Defendant cites to a single case, *United States v. Mercery*, as an example of a court finding a similar social media warrant deficient and not subject to the good-faith exception. 591 F. Supp. 3d 1369 (M.D. Ga. 2022). That case is insufficient. The case is from the Middle District of Georgia—not from the Seventh Circuit so it is not governing precedent. *See Orozco*, 576 F.3d at 750. And while the Eleventh Circuit has addressed the breadth of social media warrants such that officers in that Circuit were put on notice of what constituted overbreadth in that context, *see generally United States v. Blake*, 868 F.3d 960 (11th Cir. 2017); s*ee also Mercery*, 591 F. Supp. 3d at 1383 (noting that the Eleventh Circuit in *Blake* had "put law enforcement on notice that warrants authorizing the type of broad search of social media accounts like the one in this case are overbroad"), this, too, is out-of-circuit caselaw and is insufficient under *Orozco*. In sum, the Facebook

---

[2] Regardless, whether the Court examines the reasonableness of the officers' reliance (a) on the Facebook Warrant or (b) on the Residential Warrants, the conclusion is the same. Defendant has not pointed to, nor has the Court found, a deficient warrant in this Circuit that was materially similar to the Facebook Warrant, and the particularity requirement in the context of search warrants for social media accounts, while analyzed by some courts in other jurisdictions, is far from a "well-established legal principle." Likewise, a warrant materially similar to the Residential Warrants has also not yet been found deficient in this Circuit.

10

Warrant cannot be described as "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," particularly when Defendant has pointed to no caselaw in this Circuit finding similar warrants with similar facts deficient.

And the Facebook Warrant was not "so facially deficient in particularizing its scope that the officers could not reasonably presume [they were] valid." *Rees,* 957 F.3d at 771 (quoting *Leon*, 468 U.S. at 923). As noted above, even if the Facebook Warrant was overbroad in violation of the Fourth Amendment, it was by no means *facially deficient*. The warrant listed specific categories of data to be retrieved from Facebook, described the data categories in detail, and identified useful information that could be derived from them; further, the ping location data was limited temporally. *See Blake*, 868 F.3d at 975 (finding there was a close enough question as to particularity of the Facebook warrant such that it was not "facially deficient"). It was not unreasonable for Officer Willey and his team to presume the Facebook Warrant was valid.

Therefore, even assuming the Facebook Warrant was unsupported by probable cause and/or was overbroad, the good-faith exception applies. Suppression of the evidence recovered would not lead to *any* deterrence, let alone "appreciable deterrence," of police misconduct.

### III. Conclusion

Defendant's Motion to Suppress, (ECF No. 23), is **denied**.

11

**SO ORDERED.**

Date: 08/25/2023

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered counsel of record by CM/ECF.